| .DECUIR, Judge.
In this workers’ compensation case, the claimant, Semeki Turner, appeals a judgment of the workers’ compensation judge denying her benefits, penalties, and attorney fees. For the reasons that follow, we affirm.
FACTS
On November 2, 1998, Semeki Turner had worked in the deboning department for ConAgra Poultry Company for approximately six years. On that date, while taking a break she pulled off her gloves and noticed a rash and blisters on her hands. She reported her discovery to her supervisor and was sent to the company nurse, who gave her some ointment and sent her back to work. Over the next several days, Turner’s condition worsened, and on November 17, 1998, she was referred to Dr. James D. Kneeht.
Dr. Kneeht diagnosed bilateral eczema and secondary fungal infection and restricted her to dry work. He prescribed Nyzoral, both oral and topical cream, as well as Cutivate cream. On December 1, 1998, the fungal infection had abated, but the eczema persisted. On December 15, 1998, Dr. Kneeht noted a flare-up of the eczema and prescribed prednisone, a Decadron injection, and changed to Pencare and Pandil cream. On December 29, 1998, Dr. Kneeht found right hand eczema only and ordered the prednisone continued and added hydrocortisone and Eucerin cream. On January 19, 1999, Dr. Kneeht noted *1186 recurrent bilateral eczema and referred Turner for a dermatology consult.
On February 10, 1999, Turner saw Dr. David J. Clemons, a dermatologist. Dr. Clemons found eczema and contact dermatitis and prescribed an injection of Kenalog and topical cortisone. Dr. Clemons saw Turner next on March 10, 1999 and again on April 21, 1999. On that date, allergy testing revealed an allergy to Carba mix which is found in rubber products, herbicides, pesticides, soaps, shampoos, disinfectants, hand some adhesives. Dr. Clemons concluded that she had allergies of an endogenous nature exacerbated by external factors which might be chemicals or possibly things at work. However, Dr. Clemons also noted that while Turner was off work for two to three weeks for an ankle injury, her hands cleared and reflared before her return to work. Dr. Clemons continued to see Turner until January 2, 2000 and then again on July 2, 2001. Dr. Clemons noted that Turner’s last day at ConAgra was February 1, 2001, but her problems persisted at her July visit. Dr. Clemons found nothing in her condition that would prevent her from working.
From the time she noticed the rash on her hands in November 1998 until February 6, 2001, Turner worked in various dry areas at ConAgra. On February 6, 2001, she was laid off by ConAgra. On May 23, 2001, Turner filed for workers’ compensation benefits. The matter was tried, and the workers’ compensation judge found that Turner had not established a work-related accident or occupational disease resulting in disability. The workers’ compensation judge denied all claims with prejudice. Turner lodged this appeal.
ENTITLEMENT TO BENEFITS
Turner first contends that the workers’ compensation judge erred in finding she was not entitled to benefits as a result of an occupational disease claim. We disagree.
In Coats v. American Telephone & Telegraph Co., 95-2670 (La.10/25/96), 681 So.2d 1243, 1246-1247 (footnote omitted), the court said:
Occupational disease is defined in LSA R.S. 23:1031.1(B) as follows:
An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome. Degenerative disc disease, spinal stenosis, arthritis of any type, mental illness, hand heart-related or perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section.
In examining the merits of an occupational disease claim, the threshold question is whether or not the claimant has sustained an occupational disease resulting from causes and conditions characteristic of and peculiar to his particular trade, occupation, process, or employment. LSA R.S. 23:1031.1; Peck v. Procter & Gamble Manufacturing Co., 586 So.2d 714 (La.App. 3 Cir.1991). Proof of such a causal connection need not be shown to an absolute certainty. It is sufficient that the claimant establish the cause of his disability by a reasonable probability. However, even assuming that a claimant proves the existence of an occupational disease, the claimant also has the burden of proving that the injury was disabling. Miller v. Roger Miller Sand, Inc., 94-1151 (La.11/30/94), 646 So.2d 330.
*1187 In this case, the record fails to clearly establish that Turner suffers from an occupational disease. The medical evidence submitted indicates that Turner suffers an endogenous allergy to Carba mix products. One physician opined that this condition could possibly be exacerbated by things in the work place. However, this suggestion was mitigated by the fact that her condition both cleared and reappeared while off work for two to three weeks due to an unrelated accident and persisted months after she was laid off by ConAgra.
Accordingly, based on the record before us, we find that the workers’ compensation judge could reasonably have concluded that Turner failed to establish that she had an occupational disease.
Even if Turner established the existence of an occupational disease, she would still need to prove that her condition is disabling. The record before us clearly establishes that Turner continued to work at the ConAgra plant for over two years after her symptoms appeared. Furthermore, Turner did not offer any medical evidence to show that she was “physically unable to engage in any employment.” In fact, Dr. Clemons and Dr. Kneeht were of the opinion that she could return to work Usubject to certain dry work area restrictions similar to those already on Turner since her symptoms appeared in 1998.
After a thorough examination of the record, we find that the workers’ compensation judge was correct in determining that Turner failed to prove that she was disabled as a result of her condition. Thus, the workers’ compensation judge correctly determined that Turner was not entitled to benefits pursuant to LSA-R.S. 23:1031.1.
PENALTIES AND ATTORNEY FEES
Turner next contends the workers’ compensation judge erred in failing to award penalties and attorney fees. We disagree.
The determination of whether an employer should be cast with penalties and attorney’s fees is a question of fact, and the hearing officer’s findings shall not be disturbed on appeal absent manifest error. Woolley v. CAS Refining, Inc., 94-648 (La.App. 3 Cir. 1/11/95), 651 So.2d 860, writ denied, 95-1158 (La.6/16/95), 655 So.2d 331. We find no error in the workers’ compensation judge’s denial of penalties and attorney’s fees. As previously stated, Turner failed to establish disability and, therefore, penalties and attorney’s fees are inappropriate.
Finally, counsel for the claimant is admonished to refrain from language in briefs to this court that does not fully comply with Rule 2-12.4 of the Uniform Rules of the Court of Appeals.
CONCLUSION
For the foregoing reasons, the judgment of the workers’ compensation judge is affirmed. All costs of these proceedings are taxed to appellant, Semeki Turner.
AFFIRMED.